We move to the fourth case this morning, Peterson v. Wexford Health. Mr. Flaxman. Thank you. May it please the court. This case is about the medical treatment that plaintiff received in the Illinois Department of Corrections. Plaintiff springs federal and state law claims, which were all dismissed by the district court at the motion to dismiss stage. The defendants have confessed error on the dismissal of the state law claims, so I will address only the federal claims today. The key question on plaintiff's federal claims is what a plaintiff must plead to state a claim for deliberate indifference to medical needs under the Eighth Amendment. Because the complaint was dismissed at the pleading stage, the court assumes the truth of plaintiff's allegations. Those allegations are that the plaintiff was prescribed a medication called Poticon 25 for his genital warts. Poticon 25 is a powerful, caustic, and severe irritant. It can burn the skin if it's applied incorrectly. That's why the packaging for the drug has a big effect. Defendant Dr. DeVita, who's the prison doctor that prescribed the drug to plaintiff, ignored that warning and ordered that a nurse apply the Poticon 25 to plaintiff. The complaint alleges that Dr. DeVita knew about the warning and knew that if he didn't follow the warning, it would cause harm to plaintiff. Two nurses, defendants Mays and Coleman, instructed plaintiff to apply the medication himself. And again, the complaint alleges that those defendants, the nurses, knew that requiring plaintiff to apply the medication himself in contravenation of the FDA warning could cause harm to him. Plaintiff followed their instructions and he applied the medication himself and that caused injuries to him. The claim here is that the defendants are liable for those injuries because they ignored the known risk from a patient applying this medication to himself. The parties agree that ignoring a known risk is the standard for deliberate indifference. The test also requires an objectively serious medical condition, but there's no dispute at this stage of the case, the defendants do not dispute that plaintiff's genital warts satisfy the objectively serious medical condition prong. Despite the allegations that I just laid out about how each defendant ignored a known risk of harm, the district court ruled that some additional allegations are required to plausibly allege claims of deliberate indifference. This court has repeatedly rejected a heightened pleading standard like that. The clearest statement in the cases I think is in the discrimination area where the court has said repeatedly that a plaintiff need only plead the type of discrimination the plaintiff believes occurred by whom and when. Plaintiff's allegations met that standard and they exceeded them based on the allegations of the FDA warning and the allegations that all of the individual defendants ignored that warning when they required plaintiff to apply the medication without the assistance of the physician and in the case of the nurses to apply the medication by himself. Mr. Flaxman, I have a question about the pleading itself. If you look at the handwritten pleading that Mr. Peterson prepared before he had the assistance of counsel in two places, both paragraph 25, I'm sorry, 24 and paragraph 30, so in the appendix at page 28 and page 30, he included an allegation that he was told to go to his cell and apply the medication himself. He doesn't say, but it suggests that he was allowed to take the cream or ointment, whatever this is, and was told to go to his cell and apply it. That allegation is not included in his amended complaint. Is that correct? And I'm sorry, did you say paragraph 30? Yeah, so I'm looking at page 29 of the appendix. Yes. Right at the top, the plaintiff was issued POTICON 25 to self-apply in cell. You see that? Yes. Okay, and there's another, there's a similar allegation a page or two later. That's not in the amended complaint. And my question is, is that significant? That, I'm sure, I'm not going to disagree that that's not, that that fact, that specific fact is not in the amended complaint. Yeah, all I'm, all I'm saying is this, I'm not, I'm not trying to give you a pop quiz on the pleading or anything like that, okay? All I'm doing is I'm just looking at that and I found that, that allegation interesting because it suggests that this medication, which I have every reason to believe that your description of it is accurate and that it can be harmful. You know, with the prisoner saying, I was just, I was sent off to my cell to apply this. But in the amended complaint, it says that the two nurses refused to apply it, instructing the plaintiff to do it himself. But it doesn't say go back to your cell and apply it. That, that's, so to the extent that the location that he applied it, whether it was in the cell or in the presence of the nurses, I don't think that makes a difference. Well, it, I mean, it's one thing for a nurse to say, look, given what we're talking about here, I'm not comfortable applying it. I'm right here in front of you. You apply it and here's how to apply it. Sure. As opposed to, you know, look, I don't want anything to do with this. Go to your cell, do whatever you want. You'd never say that if you handed, you handed a prisoner a bottle of pills. Go to your cell and take as many as, as you want until you're comfortable. Um, the allegation in the complaint that plaintiff was forced to apply it to himself is consistent with the allegation in his, in his pro se complaint. And I don't, you know, that there's a way in which amended complaints are not part of the pleadings, but still may be evidence. So I think that that, what he stated in there is certainly in a way is still part of the case. The original complaint wouldn't be evidence. The amended complaint would supersede it, especially when counsel comes in and there's a pro se initially and counsel comes in. And that, that's the ruling I would ask a judge. Counsel knows rule 11 obligations and counsel perfects it, shall we say. That's the ruling I would ask the court to make. I, I would not be surprised if a district court judge allowed questioning on, well, didn't you put this in your pro se complaint? But whether it's the operative complaint in the case, I think is a separate question from admissibility. But, but I'm, I'm getting away from, from Judge Scudder's question, I think. To the extent that there is a possibility as Judge Scudder hypothesized that the nurse supervised his application of the medication, I think that would be a, might be a different case for our argument. I think it's a very fact-bound question that can't be decided at the motion to dismiss stage. So it just raises a question in my mind about the adequacy of the pleading on deliberate indifference. And the other question I had for you is it's that, the allegation with respect to the physician, is it Dr. DeVita? Yes, that's correct. Okay. The allegation as to Dr. DeVita is not, I'm prescribing this medication. It'll be dropped off at your cell. Go ahead and apply it. Rather, paragraph 12 of the complaint talks about Dr. DeVita directing a non-physician to apply the medication. I don't know what non-physician means exactly, but I'm presuming it means nurse as opposed to inmate. Right. It means nurse. Okay. It means, it means nurse. And so it, it seems very difficult for me to interpret the pleading as leading to a reasonable inference that a physician is deliberately indifferent by asking a nurse to apply a prescribed medication. Well, the, the reason that that it's, that would be true for a pill that is dispensed to a person in the regular course. The FDA warning that we've reproduced and the allegations about this medication are that they must be, it must be applied only by a physician. Yeah. I don't, I don't, you know, I don't know. There may be a lot of medications like that where the doctor says, I got a whole line of patients out in the hallway here. That's why I have assistance. I think at the, at the motion to dismiss stage, especially where there's this stern warning from the FDA that says is only, is to be applied only by a physician. The court has to draw the inference that not following that. The inference would have to be that by a licensed physician asking a licensed nurse to apply the medication that she or he was acting deliberately indifferent as to a medical need of the plaintiff. That's a tough inference. But respectfully, I disagree that the, the warning from the FDA is very clear about what the doctor has to do here. And the doctor ignored that warning that it's, it's not a, it's not a suggestion. It's not a, it is something. However, the use of prescriptions like that are within the discretion of the physician, regardless of whatever warning might be on it. Well, and I think these are all questions that would come up on a proper factual record. But he, the point is that he's not disregarding that the problem that this inmate has with his genitals. He's treating. Well, if he's treating it by giving the medication in a way that is bar. Negligent, maybe negligent. Well, I, I, I think negligence would be where there's some room for disagreement about how the prescription is supposed to be applied. Here, we have a strict FDA warning that tells how the medication must be applied. And that's why it's not negligent. That's your expert testimony, right? Well, we don't have expert testimony because this case was dismissed at the pleading to dismiss at the motion to dismiss stage. You may have an A of this case, but I'm not sure you have a deliberate indifference. So go ahead. Okay. I think everything that we've been talking about in these questions go to inferences being made against the plaintiff and at the motion to dismiss stage. And with respect to the court's previous precedents about what needs to be put into a complaint to put a defendant on notice of a claim drawing inferences for the plaintiff. The complaint here is sufficient to state an 8th amendment claim. And one other thing I would add is that to the extent there are these issues where we could have drawn this other inference, if those issues, if those new inferences and new arguments are being raised for the first time on appeal, the plaintiff should have a chance to amend his complaint and answer those issues either in writing in a brief or in a new amended complaint. I want to reserve the rest of my time unless there are more questions. I don't believe so. Thank you. Ms. Stewart? Yes. Good morning, counsel, and may it please the court. My name is Lindsay Stewart, and I represent Dr. DeVita and Waxford Health Sources. We ask that this court affirm the district court's dismissal of plaintiff's deliberate indifference claim. We're not asking that this court apply a heightened pleading standard. We are – this court must hold plaintiff to the pleading standards set forth by our Supreme Court in Iqbal and Twombly, which explain that the requirements for plaintiffs at the pleading stage and held that Rule 8 requires more than mere labels, conclusions, or formulaic recitations of the elements of a cause of action. While plaintiff is correct that fact pleading is not required at this stage, a plaintiff must provide some facts to ground their legal claims and nudge them across the line from possible to plausible. The complaint must contain facts to raise the right to relief above a speculative level. To set forth a claim for deliberate indifference, plaintiff has to plead allegations related to the defendant's state of mind, and that state of mind has to be something more than negligence. The state of mind required for a deliberate indifference claim is something approaching intentional conduct or criminal recklessness. As the court pointed out, the facts alleged in this complaint do not support the inference that Dr. DeVita was acting with a requisite culpable mental state. Here, the complaint alleges that Dr. DeVita prescribed plaintiff with Podocon-25 for treatment for his genital warts. And the allegations in the complaint state that he directed registered or licensed nurses, trained healthcare professionals, to apply the medication topically to Mr. Peterson's genital warts, which plaintiff alleges were part of the job responsibilities of the nurses. These facts, if taken as true, do not permit the inference that Dr. DeVita was intentionally or recklessly disregarding Mr. Peterson's needs. To the extent that the factual allegations regarding information contained on the packaging of Podocon-25 are contained in the complaint, plaintiff's complaint really only alleges what these, what this packaging says. The complaint does not allege that Dr. DeVita saw the packaging, read the packaging, or otherwise had knowledge of the warnings. And the extent to which plaintiff believes that Dr. DeVita should have been aware of these FDA guidelines or comported with them, those allegations are merely consistent with a claim for negligence, not a claim for deliberate indifference. If the court does not have any further, well, and I guess I would also just point out that to the extent to which plaintiff has included allegations against Wexford Health Sources, all of those allegations are based on vicarious liability for the allegations of, or for the actions of Dr. DeVita. This court has repeatedly held that respondeat superior liability does not apply to private corporations under Section 1983. Plaintiff acknowledges this precedent on appeal. He has made no argument to the court that this well-settled precedent should be overturned and therefore we would contend that the dismissal with prejudice with respect to Wexford should be affirmed. And if the court has no other questions for me, I will rest on my brief. Thank you, counsel. Mr. Siegel. Thank you. Good morning, and may it please the court, Assistant Attorney General Evan Siegel, on behalf of Defendants Laritha Coleman and Sarah Mays. We too are not here to argue for a higher pleading standard, but as my co-counsel pointed out, there are certain things required by Rule 8 in Twombly. That is adequate factual detail to lift claims from the speculative to the plausible. Relief cannot be grounded merely in some set of facts that can be imagined, but here my claims are being asked to imagine a whole lot. Now, a pro se complaint is entitled to more liberal interpretation, but we have a counseled operative complaint, as Judge St. Eve pointed out, and the key to subjective intent is that to an inmate and disregard it, and we don't have adequate detail on that. My clients could not have known about such a risk unless they knew something about Podicon-25. Podicon-25, as you have heard, is not like Tylenol or aspirin. It's not a commonly used non-prescription medication. It's a specialized drug, and under my client's care, there are over 4,000 inmates at state bill, and there's nothing in these allegations to connect the label on this unique medication to the nurses. So at root, if the nurses did not know about the risk from the label, their very involvement hasn't been sufficiently alleged, and we've touched upon it a little bit this morning, but I want to take you briefly through about a half dozen allegation complaint that are germane, so we're clear on what it says and what it doesn't. You've heard that Podicon-25 contains a powerful and caustic agent. There's an FDA warning label, bold capital letters on the packaging, which the manufacturer puts on the drug, which says the drug is to be applied only by a physician and, secondly, not dispensed to the patient. Dr. DeVita ignored this language, Peterson alleged, and then directed, this is different than what my colleagues just said, directed that a non-physician apply Podicon-25 to his genital warts. The complaint does not allege that he directed the nurses to do that. As to Coleman and Mays, Peterson alleged that their job duties included applying Podicon-25 to his affected area, but that they declined to do that and instructed him to apply the medication himself. And as Judge Scudder pointed out, we don't know where that was in this operative complaint. And finally, that both Coleman and Mays knew that Peterson would be injured. But none of these allegations are sufficient to support claim for deliberate indifference to a substantial risk of serious harm because we're missing at least one key allegation, that the nurses knew about a substantial harm. There's no allegation that the nurses ever saw, knew about, or understood this FDA warning label. And that's missing in paragraphs 16 and 19. So there's no allegation, fairly interpretive complaint, that they were deliberately indifferent to this harm. They could have had no notion of this harm without seeing and understanding this label. Again, it's not Tylenol, it's not Advil, it's not theirs. And beyond that, the complaint omitted other key factual allegations necessary for deliberate indifference. Namely, whether Mays and Coleman distributed Podicon-25 to Peterson. Could have been the pharmacy, could have been the doctor, it's not alleged. So without allegations connecting the labeled harm of the drug to an awareness and knowledge by the nurses, the subjective element of the Eighth Amendment claim is lacking. It has added allegations. Now we get into the permissible bolstering of the complaint on the response to the motion to dismiss. Also, do not resuscitate the constitutional claim. There are four main ones, and I'm focused on document 13 here. In the response to our motion to dismiss, Ms. Peterson argued that the Podicon must be applied sparingly. Nothing about the label. Again, with that, there's an allegation that soap and water must be used. Nothing about the label. Peterson also alleged that his self-application created a risk of serious harm when Coleman and Mays told him to apply the medication himself. No context about their knowledge of what Podicon-25 is all about. And finally, that it doesn't matter that the nurses were not licensed. Nothing about whether they ever saw the label. All these allegations about label connected to knowledge could have easily been included in the complaint. They are not, and that's a serious gap. But regardless of whether the nurses saw and handled any package of the Podicon-25 with the FDA labeling, the complaint also alleges that Dr. DeVita directed that a non-physician should apply Podicon-25 to the genital warts. And Judge Scudder touched upon this earlier, but that allegation provides an independently sufficient reason to affirm the district court because it lacks factual detail and substance about who was told to apply the medicine. Did Dr. DeVita tell Peterson to do it himself? Did the doctor tell Peterson to ask nurses to do it? Did he tell the pharmacy? Did Dr. DeVita instruct nurses to apply it? We don't know. We're not on notice. Twombly and Rule 8 require more. Finally, Your Honors, there's a related but further independently sufficient reason to affirm, and that is that Peterson pleaded himself out of court with the allegation that only physicians can apply Podicon-25. It may be true, as the court has mentioned a moment ago, that some things can be delegated to nurses, but nurses aren't licensed physicians. They can't do everything that a doctor can. This is a highly toxic, caustic drug. And whether they saw the label or not, there's no allegation that they were authorized as nurses to handle this medication. And the facts here, I just want to point out, differ wholly from the type of case mentioned in Mr. Peterson's reply brief where a non-physician, a guard, a nurse sees some inmate lying bleeding after an altercation, and there's visible and immediate harm to the non-doctor witness. That's not this case. We don't have visibility or immediacy because we don't have anything alleged about the label being seen. And that's the fatal flaw of this complaint, and if the court has no further questions, we would ask that the court affirm the district court. Thank you. Mr. Flaxman? Thank you. One thing that I will add that I didn't mention before in the questioning about the treatment decisions by nurses, we're not talking about RNs here. We're talking about LPNs who have much less training and much less ability, I think, to do the kind of supervision and treatment that Judge Scudder was hypothesizing, which I don't think is consistent with the argument that the nurses are making, which is that they did the right thing by refusing to apply the medication. Mr. Siegel's presentation raised a lot of questions, which I think will be important questions in the case, but are things that should be raised in discovery and should be decided on a summary, on a complete record at summary judgment or at trial. I would ask the court to follow its precedents on pleading standards and reverse the district court's ruling on the motion to dismiss, and because they're, again, confession of error by the defendants about the district court's ruling on the state law claim, we would ask the court to reverse on that claim as well. Unless there are more questions, I thank you for your time. Thanks to all counsel, and the case will be taken under advice.